IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-02901-WDM-MJW

LOWRY ASSUMPTION, LLC,

      Plaintiff,

v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

      Defendant.

---

## ORDER ON MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

Miller, J.

      This case is before me on the Motion to Compel Arbitration, Stay Proceeding, and 12(b)(6) Motion to Dismiss (ECF No. 8) filed by Defendant American International Specialty Lines Insurance Company, now known as Chartis Specialty Insurance Company ("Chartis"). Plaintiff Lowry Assumption, LLC opposes the motion. I have read the parties' written arguments and conclude that oral argument is not required. For the reasons that follow, the motion will be denied with respect to the motion to compel arbitration and granted as to dismissal of Plaintiff's breach of fiduciary duty claim. The issue of whether the parties intended their arbitration clause to be permissive or mandatory shall be expeditiously determined as a factual matter.

### Background

      This dispute arises from an insurance policy issued by Chartis to Plaintiff. Plaintiff was hired by the Air Force and the Lowry Economic Redevelopment Authority ("LERA") to perform the cleanup at the former Lowry Air Force Base in Colorado. The

total payment for the cleanup was to be $39.6 million.  However, the parties agreed that payments would be made in increments as milestones were achieved.  Chartis was designated to hold the funds in trust for Plaintiff.  To do this, the funds were placed with Chartis and the Air Force, Plaintiff and LERA purchased a blended finite risk insurance policy from Chartis.  The policy, the Clean-up Cost Cap & Closure Cost Insurance Policy at issue here, is one under which an insured pre-funds a known loss as a portion of its premium to the insurer; the insurer then pays the insured for the loss over time as the expenses are incurred.  Any potential unknown losses occurring during the policy period are covered by the insurer.

Chartis received two significant benefits for its role in holding and disbursing the funds.  First, it received a flat premium of $2.5 million.  In addition, it was permitted to invest all non-disbursed funds for its own benefit over the course of the cleanup.

Plaintiff alleges that for several years Chartis complied with its obligations but in 2009 began disputing payments and unilaterally asserted a right to decide Plaintiff's entitlement to funds regardless of the completion of milestones.  Chartis also revealed that it had paid itself various unauthorized fees and expenses from the remediation funds over the course of the project, which had never been disclosed to or approved by the Air Force, LERA, or Plaintiff.

Plaintiff filed its complaint in state court; Chartis then removed the case to this Court.  Plaintiff's Complaint (ECF No. 1-3) contains the following claims for relief: (1) breach of contract; (2) promissory estoppel; (3) common law bad faith breach of insurance contract; (4) violation of C.R.S. § 10-3-1115 and 1116; (5) conversion; (6) breach of fiduciary duty; (7) unjust enrichment; (8) civil theft under C.R.S. § 18-4-405;

2

and (9) declaratory judgment.

The policy contains several provisions concerning dispute resolution.  Most

pertinent are the following:

> H. Service of Suit - In the event that the Insured and the
> Company dispute the validity or formation of this Policy or
> the meaning, interpretation or operation of any term,
> condition, definition or provision of this Policy resulting in
> litigation, arbitration or other form of dispute resolution, the
> Insured and the Company agree that the law of the State of
> Colorado shall apply and that all litigation, arbitration or other
> form of dispute resolution shall take place in the State of
> Colorado.
>
> It is further agreed that service of process in such suit may
> be made upon counsel, Legal Department, American
> International Specialty Lines Insurance Company, 70 Pine
> Street, New York, NY 10270, or his or her representative,
> and that in any suit instituted against the Company upon this
> contract, the Company will abide by the final decision of
> such court or of any appellate court in the event of any
> appeal.
>
> Further, pursuant to any statute of any state, territory, or
> district of the United States, which makes provision
> therefore, the Company hereby designates the
> Superintendent, Commissioner, Director of Insurance, or
> other officer specified for that purpose in the statute, or his or
> her successor or successors in office as its true and lawful
> attorney upon whom may be served any lawful process in
> any action, suit of proceeding instituted by or on behalf of the
> Insured or any beneficiary hereunder arising out of this
> contract of insurance, and hereby designates the above
> named Counsel as the person to whom the said officer is
> authorized to mail such process or a true copy thereof.
>
> * * *
>
> M. Arbitration - It is hereby understood and agreed that all
> disputes or differences that may arise under or in connection
> with this Policy, whether arising before or after termination of
> this Policy, including any determination of the amount of
> Clean-Up Costs or Closure Costs, may be submitted to the

3

American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Any party may commence such arbitration proceeding and the arbitration shall be conducted in Colorado. The arbitrators shall give due consideration to the general principles of the law of Colorado in the construction and interpretation of the provisions of this Policy.

The written decision of the arbitrators shall set forth its reasoning, shall be provided simultaneously to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs. Judgments on the award may be entered in any court of competent jurisdiction. Each party shall bear equally the expenses of the arbitration.

* * *

O. Scheduled Contractor's Direct Action Against Company - Solely in the event that payment of Clean-Up Costs or Closure Costs which are approved by the Named Insured are not approved or paid by the Company within the time required by this Policy, the Company agrees and acknowledges that the Scheduled Contractor shall have the ability to bring a direct action against the Company for payment of such Clean-Up Costs or Closure Costs as if the Scheduled Contractor were the Named Insured.

Ex. A to Pl.'s Resp., ECF No. 13-1.

Based on the policy's arbitration clause, Chartis moves to compel Plaintiff to submit to arbitration and for this case to be stayed.  It also seeks dismissal of Plaintiff's breach of fiduciary duty claim on the grounds that under Colorado law, there is no fiduciary relationship between a insurer and an insured.  Plaintiff argues that the arbitration clause provides the option for arbitration but does not mandate that all

disputes be resolved exclusively by arbitration.

Standard of Review

The Federal Arbitration Act mandates a stay of a judicial proceeding where the

parties have executed a written arbitration agreement covering the dispute:

> If any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in
> writing for such arbitration, the court in which such suit is pending, upon
> being satisfied that the issue involved in such suit or proceeding is
> referable to arbitration under such an agreement, shall on application of
> one of the parties stay the trial of the action until such arbitration has been
> had in accordance with the terms of the agreement, providing the
> applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"The Supreme Court has long recognized and enforced a liberal federal policy

favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co.*

*v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004) (quotations omitted).

However, there is no presumption of arbitrability "when the dispute is whether there is a

valid and enforceable arbitration agreement." *Riley Manuf. Co., Inc. v. Anchor Glass*

*Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

Whether parties have agreed to arbitration, and the scope of that agreement, is

generally determined under contract principles. *First Options of Chicago, Inc. v. Kaplan*,

514 U.S. 938, 944 (1995).  Under Colorado law, which appears to be applicable here,

interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of*

*Denver, ex rel Manager of Aviation,* 9 P.3d 373, 376 (Colo. 2000).  "A court's duty is to

interpret a contract in a manner that effectuates the manifest intention of the parties at

5

the time the contract was signed.  The touchstone in determining the intention of the

parties is the language of the written agreement.  If the language is plain, clear and

unambiguous, a contract must be enforced as written." *Randall & Blake, Inc. v. Metro*

*Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003) (citations and

internal punctuation omitted).  Whether a contract is ambiguous is also a question of law

for the court.  *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo.

1984).  A contract is ambiguous when it is susceptible to more than one reasonable

interpretation.  *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P. 2d 741, 746

(Colo. 1992).  If I conclude that a contract is ambiguous then its meaning is a question

of fact to be determined by the finder of fact.  *Dorman v. Petrol Aspen, Inc.*, 914 P.2d

909, 919 (Colo. 1996).

Discussion

1.    Arbitration Clause - Mandatory or Permissive

Chartis argues that the arbitration clause permits either party to commence

arbitration to resolve any "disputes or differences that may arise under or in connection

with" the policy, that the claims arise in connection with the policy, and therefore the

FAA requires stay of these proceedings and an order compelling Plaintiff to pursue its

claims through arbitration.  In response, Plaintiff argues that the use of the word "may"

in the arbitration clause, combined with the existence of other language referencing

litigation and lawsuits in Conditions H and O, means that the parties contemplated that

disputes could be resolved either through arbitration or through a judicial proceeding.

The operative language in the policy provides that "all disputes or differences that

may arise under or in connection with this Policy . . . may be submitted" to arbitration

and that any party "may commence such arbitration proceeding."  Once commenced, the agreement provides that "the written decision of the arbitrators shall set forth its reasoning, shall be provided simultaneously to both parties and shall be binding on them."  The provision also sets forth mandatory language concerning how arbitrators "shall" be chosen, where the arbitration "shall" be conducted, and various rules and directions to be imposed on the proceeding.  Chartis urges that despite the use of the word "may" arbitration is mandatory and cites several cases in which courts have found arbitration clauses containing permissive language to nonetheless mandate arbitration exclusively as a remedy.  *See Block 175 Corp. v. Fairmont Hotel Mgmt. Co.*, 648 F. Supp. 450 (D. Colo. 1986).

I conclude that in this context the arbitration clause is ambiguous.  One reasonable interpretation of the clause is that it gives either party the option to commence arbitration,[1] which then becomes binding on the parties once invoked.  *See PCH Mutual Ins. Co., Inc. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67 (D. D.C. 2008) (finding similar arbitration clause to be ambiguous).  Under this reading, the parties agreed to arbitration if the aggrieved party chose to exercise that remedy but did not make it the exclusive dispute resolution mechanism, which explains the presence of language referring to litigation and judicial proceedings.  *See Nemitz v. Norfolk & Western Rwy Co.,* 436 F.2d 841, 849 (6th Cir. 1971) (finding arbitration clause "was permissive until such time as [one of the parties] invoked arbitration").  This interpretation is consistent with Condition H, which provides that in the event that the

---

[1]There is no evidence that any party has commenced arbitration at this time.

parties "dispute . . . the meaning, interpretation or operation of any term, condition, definition or provision of this Policy resulting in litigation, arbitration or other form of dispute resolution, [the parties] agree that the law of the State of Colorado shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of Colorado."  It is difficult to give effect to this language, which contemplates multiple forms of dispute resolution, while simultaneously holding that arbitration is the sole remedy in the event of a disagreement arising out of the policy.  In the event that a party files a lawsuit rather than commencing arbitration, the agreement is arguably silent or ambiguous as to the procedures to be followed if the other party then wishes to then refer the matter to arbitration.

However it is also possible to conclude that the parties intended that use of the term "may" indicates that arbitration is the sole remedy, in that the aggrieved party "may" pursue arbitration or simply abandon the claim.  *Am. Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103 (8th Cir. 1990) (where contract provided that parties "will use their best efforts to settle" any dispute but that if it could not be settled "such dispute or disagreement may be submitted to arbitration," language was mandatory; purpose of "may" was to give aggrieved party the choice between arbitration or the abandonment of the claim).  Under this reading, Condition H simply reflects the parties' agreement that Colorado law should apply regardless of which forum a party attempts to use, not that litigation is permitted when the arbitration clause applies.

Because I find that the arbitration clause is ambiguous, I will not stay these proceedings and refer the matter to arbitration.  If Chartis wishes to compel Plaintiff to arbitrate, it must carry its burden to establish that arbitration is mandatory through a

8

factual determination on the issue.  See 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

      2.    <u>Motion to Dismiss Breach of Fiduciary Duty Claim</u>

Chartis moves to dismiss Plaintiff's claim for breach of fiduciary duty on the grounds that under Colorado law, no fiduciary or quasi-fiduciary relationship exists between an insured and insurer in a first-party context.  *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 152 (Colo. 2007).  In response, Plaintiff argues that because Chartis agreed to hold the contract funds in trust, and functions more or less as an escrow agent, it has fiduciary duties.  Plaintiff has not cited any persuasive Colorado law on the issue and, given that the parties' relationship is fundamentally that of an insured/insurer, I see no reason to impose a fiduciary duty upon the insurer in these circumstances.  Moreover, I conclude that the Plaintiff's concerns are adequately addressed by its remaining claims, including its tort claim for breach of duty of good faith.  *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010) ("[A]s a result of the special nature of the insurance contract and the relationship which exists between the insurer and the insured, in addition to liability for regular breach of contract, an insurer's bad faith breach of an insurance contract also gives rise to tort liability.") (citations and internal punctuation omitted).

Accordingly, it is ordered:

1.    Defendant's Motion to Compel Arbitration, Stay Proceeding, and 12(b)(6) Motion to Dismiss (ECF No. 8) is denied in part and granted in part.  The motion is denied to the extent Defendant seeks to stay these proceedings

and compel Plaintiff to submit its claims to arbitration.  Defendant has

failed to carry its burden of proof at this stage to demonstrate the

existence of a mandatory arbitration clause.  The motion is granted as to

Defendant's request for dismissal of Plaintiff's sixth claim for relief (breach

of fiduciary duty).  The sixth claim for relief shall be dismissed with

prejudice.

DATED at Denver, Colorado, on April 5, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge